## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CATHY AIKEN, JAMES AIKEN, AND RUTH MACOUBRIE, as the surviving children of decedent Harold Thomas Aiken, and CATHY AIKEN, as Administrator of the estate of Harold Thomas Aiken,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**ASSURANCE HEALTH SYSTEM LLC and ANEW HEALTH, LLC,**<br><br>**Defendants.** | **Case No. 22-2385-DDC-ADM** |

## MEMORANDUM AND ORDER

In broad terms, this is a negligence case. Plaintiffs claim that their father, Harold Thomas Aiken, fell and fractured his hip at a nursing facility in Shawnee, Kansas. Three days later, he died. Mr. Aiken's surviving children and his estate sued defendants for wrongful death. Plaintiffs claim that defendants negligently understaffed and underfunded the nursing facility. They also claim that the two defendants are alter egos of one another. Plaintiffs hope to recover for Mr. Aiken's pain and suffering. They also aspire to recover punitive damages.

The case's procedural history is something of a thicket. On April 1, 2023, plaintiffs moved to amend their Complaint to substitute Anew Health, LLC for defendant Assurance Health Shawnee, LLC. Doc. 34. Plaintiffs also sought to amend the Scheduling Order. The court expedited briefing on plaintiffs' request, concluding the briefing on that motion by April 19, 2023. Doc. 35. While the amendment motion still was pending, the then-current defendants

filed a Motion for Summary Judgment.  Doc. 38.  Their motion sought judgment in favor of all defendants on all claims, arguing that each element of plaintiffs' negligence claim required expert testimony.  But plaintiffs hadn't timely disclosed any experts so, defendants reasoned, they deserved summary judgment against all the existing Complaint's claims.  *See* Doc. 39 at 2–4.  Defendants also opposed plaintiffs' Motion to Amend, claiming that plaintiffs couldn't demonstrate excusable neglect or even good cause to amend the case's schedule.  *See* Doc. 36.

The amendment battle didn't go defendants' way.  Judge Mitchell, the United States Magistrate Judge assigned to the case's non-dispositive issues, granted most of plaintiffs' Motion to Amend.  She held that plaintiffs had shown good cause for their late arriving amendment motion.  Doc. 40.  And, importantly, she attributed defendants' claims of prejudice to their own litigation tactics.  She explained that defendants seemingly knew plaintiffs had sued the wrong LLC "and yet [they] did nothing."  *Id.* at 7.  Defendants' predicament, she concluded, was "a product of the litigation tactics they chose to pursue."  *Id.*

Now, to the current phase of the thicket.  Three motions await the court's decision.  They are:

(1)    Defendants' Motion for Summary Judgment (Doc. 38);

(2)    Defendants' objections appealing Judge Mitchell's Memorandum and Order granting plaintiffs leave to amend their Complaint (Doc. 43, appealing Doc. 40); and

(3)    Defendants' Motion to Dismiss, claiming that plaintiffs' Amended Complaint fails to state a plausible claim upon which the court could grant relief (Doc. 51).

This Order addresses all three motions.  *First*, it reviews Judge Mitchell's Order and decides defendants' Objections to it.  Concluding that Judge Mitchell didn't err, the court, *next*, evaluates defendants' Motion for Summary Judgment.  The court denies that motion because the Amended Complaint mooted that motion.  *Last*, the court examines defendants' Motion to Dismiss and

concludes that plaintiffs indeed have pleaded a plausible claim for relief.  The court thus denies that motion, as well.

## I.    Objections & Motion to Review Magistrate Judge's Order

Defendants ask the court to overrule Judge Mitchell's Order and strike the Amended Complaint and plaintiffs' Motion to Amend.  Doc. 43 at 15.  They argue Judge Mitchell erred by concluding that plaintiffs showed good cause to amend the case's schedule.  She also failed to consider, defendants assert, how plaintiffs' late amendment would prejudice defendants.  Before analyzing these arguments, the court recites the standard of review that the district court uses to review magistrate judges' orders.

### A.    Legal Standard of Review for Magistrate Judge's Order

The district court applies different legal standards to a magistrate judge's decisions, depending whether they involve dispositive or non-dispositive matters.  Defendants contend that the court should apply the dispositive standard here and review the Order de novo.  *Id.* at 2. Defendants note that the Order functionally moots both defendants' first Motion to Dismiss (Doc. 10) and defendants' Motion for Summary Judgment (Doc. 38), *i.e.*, two dispositive motions.  *Id.*  The Order also overruled defendants' futility-based objections to plaintiffs' Motion to Amend, defendants claim.  *Id.*  And denying leave to amend on futility grounds is a dispositive decision because it "removes a defense or claim from the case."  *Id.* (quoting *Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1157 (D. Kan. 2000)).  So, defendants assert, the court should apply the dispositive matters standard and review Judge Michell's Order de novo.

The court agrees with the general rule defendants cite.  A district judge's review must treat a magistrate judge's decision as dispositive even if it isn't facially dispositive, so long as it has "an identical effect."  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988).  But the Order here doesn't have a dispositive motion's effect.  The court mooted both the

first Motion to Dismiss (Doc. 10) and now, later in this Order, moots the Motion for Summary Judgment (Doc. 38) without prejudice to re-filing.  *See* Doc. 42; *see* § III.  And while a court denying leave to amend effectively may remove a defense or claim from the case, here the Order *grants* leave to amend.  So, all claims and avenues for defense remain intact.  *See Pedro*, 118 F. Supp. 2d at 1157 ("[W]here the magistrate judge's order grants leave to amend[, it] does not have the effect of removing any claim or defense."); *see also United States v. Harrington*, No. 19-CV-2965-PAB-GPG, 2021 WL 9849310, at *1 n.2 (D. Colo. Oct. 28, 2021) (concluding that grants of leave to amend are "'non-dispositive as they do not remove claims or defenses of a party'") (quoting *Stetz v. Reeher Enterp., Inc.*, 70 F. Supp. 2d 119, 120 (N.D.N.Y. 1999)).  The court thus reviews the Order under the non-dispositive matters standard, outlined below.

When the district court reviews decisions on order deciding non-dispositive pretrial matters, the district court applies a "'clearly erroneous or contrary to law'" standard of review. *See First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp.*, 847 F.2d at 1461–62); *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  Under this clearly erroneous standard, a district court doesn't review factual findings de novo.  Instead, the court must affirm a magistrate judge's findings unless a review of the entire evidence leaves the district judge "with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp.*, 847 F.2d at 1464 (citation and internal quotation marks omitted).  In contrast, the "contrary to law" standard permits a district judge to conduct an independent review of purely legal determinations made by the magistrate judge.  *Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007) (citations omitted).  A magistrate judge's order is contrary to law when "it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Walker v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 09-1316-MLB,

2011 WL 2790203, at *2 (D. Kan. July 14, 2011) (citation omitted).  Defendants contend that the Order fails under either non-dispositive standard of review.  Before the court reviews the Order, it recites the legal standard applied to motions to amend the case's schedule after the deadline has passed.

### B.      Legal Standard of Review for Leave to Amend

The Tenth Circuit has identified a two-part test for orders granting leave to amend after a scheduling order deadline.  *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019 (10th Cir. 2018).  The party seeking to amend the deadline "'must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard.'"  *Id.* (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)).  Rule 16(b)(4) requires good cause and the judge's consent to modify a scheduling order.  Fed. R. Civ. P. 16(b)(4).  And under Rule 15, a party may amend its pleadings late only with "the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a).  Of the test's two prongs, the Rule 16(b)(4) requirement is more stringent, because it "'requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts.'"  *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Gorsuch*, 771 F.3d at 1240); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires.").

### C.      Analysis

Defendants argue that Judge Mitchell misapplied Rule 16(b)(4) and Rule 15(a), rendering the Order clearly erroneous or contrary to law.  They assert that the Order erroneously concludes plaintiffs showed good cause to amend the scheduling order.  Defendants also contend that the Order fails to address the way the late amendment prejudiced defendants.  The court evaluates these arguments, below.

### 1.     Good Cause Under Rule 16(b)(4)

Rule 16(b)(4) provides that the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[G]ood cause obligates the moving party to provide an adequate explanation for any delay[.]" *Husky Ventures, Inc.*, 911 F.3d at 1020 (citation and internal quotation marks omitted). The movant must "show the scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Birch*, 812 F.3d at 1247 (quoting *Gorsuch*, 771 F.3d at 1240). "Newly-obtained information, if it was truly unknown and unavailable, can constitute a good-cause basis for modifying the Scheduling Order." *Gale v. City & Cnty. of Denver*, 962 F.3d 1189, 1195 (10th Cir. 2020) (brackets, citation, and internal quotation marks omitted).

Defendants argue that Judge Mitchell's Order erroneously concluded that plaintiffs had demonstrated good cause because: (1) plaintiffs failed to research the case diligently; and (2) she incorrectly placed the burden on defendants to show that plaintiffs lack good cause.

### a.     Diligence

"In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Husky Ventures, Inc.*, 911 F.3d at 1021 (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011)). Defendants argue that plaintiffs failed to investigate their claims diligently because they easily could've identified the correct defendant from an online public record search before the deadline to amend had passed. Doc. 36 at 3–4. The Order, defendants argue, "failed to address this primary consideration in any detail, focusing instead on Defendant's purported responsibility for the delay in getting the appropriate party in the case." Doc. 43 at 4–5 (internal quotation marks omitted).

But Judge Mitchell did consider plaintiffs' diligence. The Order noted that plaintiffs' "counsel reviewed Anew Health Shawnee's website and found 15 references to Assurance

Health System." Doc. 40 at 5. It also noted that plaintiffs used an online public record search to learn that Assurance Health Shawnee and Anew Health Shawnee share the same address, thus confirming their apparent relationship. The search also revealed Assurance Health Shawnee's forfeited status. Plaintiffs assert that they saw the forfeiture date, noted that it was over two weeks after Mr. Aiken's fall, and "drew the reasonable"—albeit, mistaken—"conclusion that Assurance Health Shawnee, LLC operated Anew Health Shawnee." Doc. 37 at 3. The Order relied on plaintiffs' explanation to conclude that plaintiffs genuinely didn't know the correct defendant until March 27, 2023. So, instead of knowing "the underlying conduct but simply fail[ing] to raise [their] claims," plaintiffs learned "new information through discovery"—here, through defendants' March 27 correspondence. *Gorsuch*, 771 F.3d at 1240; *see also* Doc. 34-4.

Defendants' arguments have failed to leave the court "with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp.*, 847 F.2d at 1464 (citation and internal quotation marks omitted). Nor does the court find that the Order "fails to apply or misapplies relevant . . . case law [.]" *Walker*, 2011 WL 2790203, at *2. Judge Mitchell correctly applied Rule 16(b)(4) to determine that plaintiffs showed good cause to amend. The court thus rejects defendants' first argument. It now turns to defendants' second argument, *i.e.*, that Judge Mitchell's Order incorrectly saddled defendants with the burden to prove why plaintiffs don't have good cause, even though it's plaintiffs' burden to prove why they *do* have good cause.

### b. Burden of Proof

Defendants argue that the Order "not only inappropriately shifted the focus of the [good cause] inquiry, but also the burden entirely." Doc. 43 at 5. As evidence of the court's misunderstanding, defendants cite the following passage from the Order: "Defendants have not identified any reason why amendment should be denied under Rule 15 or 16. Plaintiffs should therefore be given the opportunity to pursue their claims against Anew Health, LLC on the

merits." Doc. 40 at 7. This excerpt, defendants contend, shows that the Order incorrectly placed the burden on them to introduce reasons to deny the Motion to Amend. Doc. 43 at 5.

But defendants take this excerpt from the Order out of context. These words come at the end of Judge Mitchell's analysis explaining why plaintiffs had demonstrated sufficient good cause. Indeed, the Order cites four of defendants' behaviors, justifying plaintiffs' reasonable belief that they originally had sued the correct defendants. Namely, defendants: (1) chose not to tell plaintiffs that they'd named the wrong defendant, despite multiple communications; (2) identified relevant witnesses in their Rule 26(a)(1)(A) initial disclosures; (3) agreed to produce an employee of the Facility for deposition; and (4) scheduled a mediation. *Id.* Judge Mitchell further reasoned that plaintiffs had demonstrated good cause because defendants "apparently have known during the entire pendency of this lawsuit that the incorrect entity was named and yet did nothing." *Id.* at 7.

So, only after accrediting plaintiffs' explanations for the delay did the Order note that defendants "have not identified any reason why amendment should be denied under Rule 15 or 16." *Id.* Viewed in this more fulsome—and fair—context, the Order first explains why plaintiffs have met their burden; then, it adds the point that defendants had offered no arguments to rebut plaintiffs' explanations, for good measure. In other words, the Order granted plaintiffs' motion because plaintiffs asserted an adequate explanation, and, on top of that, defendants had failed to refute plaintiffs' showing.

The court thus rejects defendants' second argument that the Order erroneously applied Rule 16(b)(4). The Order correctly applied the burden of proof to plaintiffs. Next, the court addresses defendants' argument that that the Order failed to consider how an amendment prejudices defendants.

8

### 2.      Bad Faith and Undue Prejudice Under Rule 15(a)

Defendants argue that Judge Mitchell's Order failed to analyze adequately the amendment's undue prejudice to defendants and whether plaintiffs acted in bad faith.  Doc. 43 at 14.  Under Rule 15, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citation omitted).  Undue prejudice to the non-moving party is the "most important[] factor in deciding a motion to amend the pleadings[.]"  *Minter*, 451 F.3d at 1207.  And the non-moving party "has the burden of showing prejudice."  *Little v. Reed-Prentice Div. of Package Mach. Co.*, 131 F.R.D. 591, 593 (D. Kan. 1990) (citing *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540 (8th Cir. 1977)).  "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment."  *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (citation and internal quotation marks omitted).  "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."  *Id.*

Defendants argue that Judge Mitchell's Order failed to address—at least adequately— whether defendants would suffer prejudice if the court granted the amendment motion or whether plaintiffs had acted in bad faith.  Doc. 43 at 14.  The problem with these arguments is that Judge Mitchell plainly addressed defendants' bad faith and undue prejudice arguments. *First*, the Order acknowledges defendants' argument that plaintiffs had acted in bad faith by failing to investigate the case diligently before the deadline to amend passed.  Judge Mitchell rejected this argument for the same reasons she rejected defendants' Rule 16(b)(4) good cause

argument.  Doc. 40 at 6; *see* § I.C.1.a.  *Next*, her Honor's Order considers defendants' argument that they "would suffer prejudice if Plaintiffs were essentially granted a 'do over' in this litigation and have indeed already sustained prejudice in having to defend claims wholly lacking a factual basis against entities wholly uninvolved in the underlying circumstances."  Doc. 40 at 6–7.  Judge Mitchell rejected this argument because defendants "have known during the entire pendency of this lawsuit that the incorrect entity was named and yet did nothing."  Doc. 40 at 7. In other words, defendants didn't sustain prejudice when plaintiffs sued the wrong entity because defendants knew all along that plaintiffs had sued the wrong entity and, instead of filing a motion to dismiss the erroneous party, defendants continued to entangle themselves in litigation.

In sum, Judge Mitchell's Order properly applied Rule 15(a) because it weighed defendants' bad faith and undue prejudice arguments.  The court thus rejects defendants' argument that the Order clearly erred or acted contrary to law when it granted plaintiffs leave to amend.

### 3.  Conclusion

Both of defendants' arguments fail.  Judge Mitchell properly applied Rule 16(b)(4) to conclude that plaintiffs had shouldered their burden to show good cause, including adequately researching their claim.  And Judge Mitchell sufficiently considered—but rejected—defendants' Rule 15(a) bad faith and undue prejudice arguments.  The court thus denies defendants' request to strike the Amended Complaint and the Motion to Amend.  Having concluded that the Amended Complaint (Doc. 41) remains in effect and governs the case, the court turns to defendants' other motions.

## II.   Motion for Summary Judgment

Defendants Assurance Health Shawnee, LLC, Assurance Health LLC, and Assurance Health System LLC moved for summary judgment on all claims asserted in the original

Complaint (Doc. 1). Doc. 38. But plaintiffs' Amended Complaint supersedes the Complaint, rendering defendants' Motion for Summary Judgment against the original Complaint moot. *See, e.g.*, *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) ("[I]t is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." (citation and internal quotation marks omitted)). Based on this rule, the court denies defendants' Motion for Summary Judgment (Doc. 38) as moot. This ruling doesn't prejudice defendants' right to file a renewed motion for summary judgment against the claims in the operative version of the Complaint. The court now turns to defendants' last pending motion—their Motion to Dismiss (Doc. 51) the Amended Complaint.

## III.        Motion to Dismiss

Defendants filed a Motion to Dismiss plaintiffs' Amended Complaint. Doc. 51. Defendants ask the court to dismiss plaintiffs' Amended Complaint because it purportedly doesn't plead facts sufficient to allege a claim on which relief may be granted. The court begins with the facts alleged by the Amended Complaint. Then, the court recites the motion to dismiss legal standard. Next, it analyzes whether plaintiffs sufficiently allege a wrongful death claim, claims for pain and suffering, and for punitive damages.

### A.        Factual Allegations

Defendants Anew Health, LLC (Anew) and Assurance Health System (AH System) own and operate Anew Health Shawnee (the Facility), a skilled nursing facility in Shawnee, Kansas. Doc. 41 at 2 (Am. Compl. ¶¶ 7, 14). Harold Thomas Aiken—plaintiffs' father—was a resident at the Facility. *Id.* at 1 (Am. Compl. ¶¶ 1–4). On June 27, 2021, Mr. Aiken suffered from a fall and hip fracture at the Facility. *Id.* Three days later, Mr. Aiken died from the fall and fractured hip. *Id.*

Before the accident, Mr. Aiken presented a risk for developing falls. *Id.* at 5 (Am. Compl. ¶ 33). He was defenseless and dependent on the Facility to provide for his safety, care, and treatment. *Id.* at 13 (Am. Compl. ¶¶ 80–81). No Facility staff member created a plan of care to manage this risk. *Id.* at 5 (Am. Compl. ¶ 35). From his admission to discharge, no Facility staff assessed Mr. Aiken's risk of falls, implemented fall interventions, or monitored Mr. Aiken's condition. *Id.* at 5–6 (Am. Compl. ¶ 36). The Facility didn't offer any sort of staff training about resident fall assessment, prevention, monitoring or intervention. *Id.* at 7 (Am. Compl. ¶¶ 37–38). And the Facility lacked an adequate number of employees daily to meet resident needs, intervene to prevent falls, or monitor and supervise resident conditions. *Id.* (Am. Compl. ¶ 39).

Mr. Morris Long is the sole member of both Anew and AH System. *Id.* at 2–3 (Am. Compl. ¶¶ 10–19). AH System controlled Anew and the Facility. *Id.* at 3 (Am. Compl. ¶ 16). AH System operated the Facility's day-to-day functions, including control of the Facility's physical and financial resources. *Id.* at 7 (Am. Compl. ¶¶ 46–47). Anew had no autonomy over its finances, staffing, resources, or business practices. *Id.* (Am. Compl. ¶¶ 42–43). Under AH System's leadership, the Facility lacked sufficient funds to provide qualified staff to meet resident needs. *Id.* (Am. Compl. ¶ 44). Yet, AH System directed the Facility to recruit and admit high acuity patients and retain residents whose needs exceeded the qualifications and care capabilities of the facility's staff. *Id.* at 8 (Am. Compl. ¶¶ 50–51). In other words, AH System undercapitalized and understaffed the Facility while recruiting resource-demanding patients.

In September 2022, plaintiffs Cathy Aiken, James Aiken, Ruth Macoubrie—decedent's children—and decedent's Estate sued the Facility's owners for Mr. Aiken's wrongful death. Doc. 1.

### B. Legal Standard

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained simply, "will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

For a complaint to survive a motion to dismiss under Rule 12(b)(6), the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a motion to dismiss under Rule 12(b)(6), the court must assume that the factual allegations in the complaint are true.  *Id.* (citing *Twombly*, 550 U.S. at 555).  But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Also, the

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

### C.   Analysis

Defendants ask the court to dismiss the Amended Complaint because it relies on "copy-and-pasted" pleadings which fail "to allege sufficient facts for *these claims* against *this Defendant*[.]" Doc. 53 at 4. Plaintiffs' wrongful death action against defendants AH System and Anew (Count I) seeks compensatory damages. Plaintiffs implicate AH System through the theory that AH System is Anew's alter ego (Count II). And decedents' Estate seeks to recover damages for pain and suffering and punitive damages from both defendants (Count III). Counts II and III rely on Count I because decedent's Estate can't recover damages absent an underlying negligence claim. And whether AH System is Anew's alter ego matters because it drives plaintiffs' ability to pierce the corporate veil and recover damages from both defendants. The court thus begins with plaintiffs' wrongful death action before addressing the alter ego theory, pain and suffering, and punitive damages claims.

### 1.   Wrongful Death (Count I)

Plaintiffs sue defendants for wrongful death under Kan. Stat. Ann. § 60-1902. Doc. 41 at 1.[1] "To establish a claim for wrongful death based on negligence, a plaintiff must prove the existence of a duty, breach of the duty, injury, and a causal connection between the breach of the duty and the injury suffered." *Robbins v. City of Wichita*, 172 P.3d 1187, 1192 (Kan. 2007)

---

[1]   Kansas law governs the claims asserted in this diversity action. *See* Doc. 41 at 4 (invoking court's diversity subject matter jurisdiction). In a diversity case like this one, the court applies the choice of law rules of the forum state. *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010) (citation omitted). Kansas courts follow the rule of *lex loci delicti* for tort claims, applying the substantive law of the place where the tort occurred. *Anderson v. Com. Constr. Servs., Inc.*, 531 F.3d 1190, 1193–96 (10th Cir. 2008); *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985). Here, the facts alleged to support plaintiffs' claims purportedly occurred in Kansas—*i.e.*, at the Facility where decedent resided and suffered a terminal fall.

(citation omitted).  The court thus evaluates whether the Amended Complaint sufficiently alleges duty, breach, causation, and injury.

### a.      Duty

The Kansas Supreme Court has held that "a plaintiff in a negligence action must first prove the existence of a duty owed to him or her by the defendant." *S. ex rel. S. v. McCarter*, 119 P.3d 1, 8 (Kan. 2005).  "As a general rule, the proprietors of a nursing home are under a duty to exercise reasonable care to avoid injuries to patients, and the reasonableness of such care is to be assessed in the light of the patient's physical and mental condition." *Tudor v. Wheatland Nursing L.L.C.*, 214 P.3d 1217, 1222 (Kan. Ct. App. 2009) (citation and internal quotation mark omitted).

The Kansas Department of Health and Environment (KDHE) regulates nursing facilities. Kan. Stat. Ann. § 39-925(a); *see also* Kan. Stat. Ann. § 39-923(a)(2) (defining nursing facilities). KDHE's administrative regulations require that "[e]ach nursing facility shall conduct at the time of admission, and periodically thereafter, a comprehensive assessment of a resident's needs[.]" Kan. Admin. Regs. 28-39-151.  Nursing facilities also must "develop a comprehensive care plan for each resident" based on the residents' "comprehensive assessment."  Kan. Admin. Regs. 28-39-151.  To implement residents' care plans, "[e]ach nursing facility shall have sufficient nursing staff to provide nursing and related services[.]"  Kan. Admin. Regs. 28-39-154; *see also* Kan. Admin. Regs. 28-39-152 ("Each resident shall receive and the nursing facility shall provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being in accordance with the comprehensive assessment and the plan of care.").

The Amended Complaint alleges that defendants Anew and AH System both owned and operated the Facility.  Doc. 41 at 2 (Am. Compl. ¶¶ 7, 14).  Plaintiffs allege that the Facility is a

"skilled nursing Facility" which provides "ancillary medical services to" decedent. *Id.* at 2, 13. Plaintiffs also allege that decedent "suffered from an avoidable fall and hip fracture" at the Facility, and later died as a result of the fall. *Id.* at 1. So, the Facility—and Anew and AH System, as its owners—had a duty to follow the KDHE's nursing facility regulations, thus establishing a duty to residents, including decedent.

In sum. the Amended Complaint sufficiently alleges that defendants owed a duty to care for decedent as a resident at a skilled nursing facility. This duty included providing adequate staff and developing and implementing a plan of care.

### b.     Breach

For plaintiffs' wrongful death claim to survive, plaintiffs must allege that defendants breached their duty to decedent. Plaintiffs allege that defendants had control over the Facility's nursing procedures, staffing, and funding. Doc. 41 at 3, 4. Plaintiffs allege that defendants breached their duty to of care to decedent 19 different times by:

a.     Failing to adequately assess, monitor, document, treat, and respond to Resident's physical condition;

b.     Failing to adequately assess Resident's risk of developing falls;

c.     Failing to timely, consistently, and properly monitor, assess, and document Resident's physical condition;

d.     Failing to provide adequate nursing staff to ensure Resident's 24-hour protective oversight and supervision;

e.     Failing to have a sufficient number of staff at the Facility to ensure Resident's needs were being met with regard to fall prevention;

f.     Failing to provide adequate assistive devices and interventions to prevent Resident's falls;

g.     Failing to enact and carry out an adequate Care Plan in regard to Resident's increased risk for falls;

h.     Failing to provide adequate assistance and assistive devices to prevent Resident's falls;

i.      Failing to adequately assess, monitor, ensure, and document the administration of adequate nutrition and hydration to Resident;

j.      Failing to prevent the development and worsening of Resident's falls;

k.      Failing to timely report Resident's changes in condition to a physician;

l.      Failing to carry out the instructions of Resident's physician;

m.     Failing to adequately, timely and consistently prevent, assess, and treat Resident's risk of falling;

n.      Failing to timely transfer Resident to a Facility that could provide adequate care;

o.      Failing to properly supervise and train the employees, agents and/or servants of the Defendants who were responsible for the care and treatment of Resident;

p.      Failing to have and/or implement appropriate policies and procedures regarding the prevention, assessment, and treatment of falls in residents like Resident;

q.      Failing to carry out and follow standing orders, instructions and protocol regarding the prevention of Resident's falls;

r.      Failing to ensure the behavioral facilities was properly capitalized.

s.      Failing to perform and measure up to the requisite standards of care required and observed by health care providers and further particulars presently unknown to Plaintiffs, but which is verily believed and alleged will be disclosed upon proper discovery procedures during this litigation.

*Id.* at 14–15. Defendants argue that the pleadings lack sufficient detail to connect defendants'

actions to plaintiffs' injuries. Doc. 53 at 3–4.

It's true. The pleadings aren't verbose. But Rule 8 doesn't require plaintiffs to plead

"'detailed factual allegations'" to survive at the motion to dismiss stage. *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555). Plaintiffs need only plead "a short and plain statement of

the claim[.]" Fed. R. Civ. P. 8(a)(2). And the Amended Complaint does so. It pleads more than

"'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Id.* (quoting *Twombly*, 550 U.S. at 555). For example, plaintiffs don't merely argue that defendants breached their duty. Instead, plaintiffs identify 19 different ways that defendants allegedly breached their duty to decedent—including staffing, policy, and training shortcomings. The pleadings thus "allow[] the court to draw the reasonable inference that" defendants breached their duty of care to decedent. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The court now turns to the third wrongful death element plaintiffs must allege—causation.

### c.    Causation

The pleadings allege that defendants caused decedent's injuries because they failed to staff and fund the Facility properly. Doc. 41 at 12, 16. Plaintiffs argue that if defendants had created and implemented a care plan, and properly staffed and funded the Facility, decedent wouldn't have fallen, broken his hip, and died. They also allege that "none of the Facility staff . . . [p]roperly assessed [decedent's] risk of falls" or "created a Care Plan for [decedent] that implemented the appropriate interventions." *Id.* at 5. Plaintiffs allege that the Facility's "staffs were below necessary levels, and . . . the staffs that were present were not properly qualified or trained[.]" *Id.* at 12. Plaintiffs also allege that during decedent's "residency at the Facility, [AH System] negligently failed to provide and/or hire, supervise and/or retain staff capable of providing [decedent] with a clean, safe and protective environment[.]" *Id.*

The pleadings bridge the gap separating the possible and the plausible because they explain *how* defendants' allegedly breached the duty of care, resulting in decedents' injury. The pleadings allege that defendants had a duty to care for decedent, including a duty to evaluate decedent's abilities and create a care plan. And plaintiffs allege that defendants breached this duty because they didn't staff and didn't fund the Facility, and never performed evaluations or created care plans. Plaintiffs' reasoning continues that defendants' breach caused decedent's

injuries because decedent wouldn't have fallen had defendants:  (1) evaluated decedent; (2) created a care plan; and (3) provided adequate staff and funding to implement the care plan (*i.e.*, had staff accompany decedent to prevent avoidable falls).  The pleadings thus adequately allege causation.

### d.    Injury

Finally, plaintiffs allege that decedent "was harmed and suffered non-economic damages, including pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life; death; and other damages" because of defendants' failure to staff, fund, and maintain the facility. Doc. 41 at 15.  Plaintiffs also allege that they "suffered non-economic damages including, loss of companionship, loss of comfort, loss of guidance, loss of counsel and loss of instruction, pain, suffering, bereavement and mental anguish." *Id.* at 16.  Plainly, these pleadings allege injury.

To summarize, plaintiffs sufficiently allege duty, breach, causation, and injury to support a wrongful death claim against defendants (Count I).  The court now turns to plaintiffs' theory that Anew is the alter ego of AH System.

### 2.    Alter Ego (Count II)

Plaintiffs seek to pierce the corporate veil to recover damages from both defendants on the theory that AH System controls Anew and the Facility.  "The doctrine of alter ego is used to impose liability on the individual who uses a corporation merely as an instrumentality to conduct his own personal business." *Sampson v. Hunt*, 665 P.2d 743, 751 (Kan. 1983).  Under alter ego liability, "the court merely disregards the corporate entity and holds the individual responsible for his acts knowingly and intentionally done in the name of the corporation." *Id.*  Plaintiffs also may allege an alter ego theory "in a parent-subsidiary corporation context[.]" *Dean Operations, Inc. v. One Seventy Associates*, 896 P.2d 1012, 1016–17 (Kan. 1995).  Here, plaintiffs employ

the parent-subsidiary version of the theory, alleging that AH System exploited Anew.  Doc. 41 at

16–18.

The Kansas Supreme Court relies on ten factors "as guidelines in making a determination

of alter ego status."  *Dean Operations, Inc.*, 896 P.2d at 1017.

(1) [W]hether the parent corporation owns all or a majority of the capital stock of
the subsidiary;

(2) whether the corporations have common directors or officers;

(3) whether the parent corporation finances the subsidiary;

(4) whether the parent corporation subscribed to all of the capital stock of the
subsidiary or otherwise causes its incorporation;

(5) whether the subsidiary has grossly inadequate capital;

(6) whether the parent corporation pays the salaries or expenses or losses of the
subsidiary;

(7) whether the subsidiary has substantially no business except with the parent
corporation, or no assets except those conveyed to it by the parent corporation;

(8) whether in the papers of the parent corporation, and in the statements of its
officers, the subsidiary is referred to as such or as a department or division;

(9) whether the directors or executives of the subsidiary do not act independently
in the interest of the subsidiary but take direction from the parent corporation;
and

(10) whether the formal legal requirements of the subsidiary as a separate and
independent corporation are not observed.

*Id.* at 1017–18 (citing *Schmid v. Roehm GmbH*, 544 F. Supp. 272, 275 (D. Kan. 1982)).

Defendants argue that plaintiffs fail to state an alter ego claim because plaintiffs merely

regurgitate the legal standard.  Doc. 53 at 5–6.  And "a formulaic recitation of the elements of a

cause of action will not do."  *Twombly*, 550 U.S. at 557.  But the full content of the Amended

Complaint won't abide defendants' characterization of it.

The Amended Complaint alleges that while Anew technically owns the Facility, that AH System effectively operates the Facility by controlling Anew.  *Id.* at 6–7.  Plaintiffs plead that:

(1)  The Alter Ego Defendant [AH System] own[s] all or most of the capital stock of the Subsidiary [Anew];

(2)  The Alter Ego Defendant and the Subsidiary have common directors or officers;

(3)  The Alter Ego Defendant finance[s] the Subsidiary;

(4)  The Alter Ego Defendant subscribe[s] to all of the capital stock of the Subsidiary;

(5)  The Alter Ego Defendant[s] caused the incorporation of the Subsidiary;

(6)  The Facility has grossly inadequate capital;

(7)  The Alter Ego Defendant pay[s] the salaries and other expenses or losses of the Subsidiary;

(8)  The Alter Ego Defendant use[s] the property of the Subsidiary as its own; and

(9)  The directors or executives of the Subsidiary do not act independently in the interest of the Subsidiary but take their orders from the Alter Ego Defendant in the latter's interest.

Doc. 41 at 17.  This style of pleading amounts to a "[t]hreadbare recital[] of the elements of a cause of action" because it parrots *Dean Operations*' test almost verbatim with no additional information or details.  *Iqbal*, 556 U.S. at 678.

But plaintiffs' other allegations save plaintiffs' alter ego theory from this inadequacy. First, plaintiffs allege that Mr. Morris Long is the sole member of both Anew and AH System. Doc. 41 at 2, 3; *Dean Operations, Inc.*, 896 P.2d at 1017 (satisfying the "the corporations have common directors or officers" factor).  Plaintiffs also allege that AH System "made critical operational decisions and choices which manipulated and directly impacted the Facility's revenues and expenditures," including:

a.  the number of staff allowed to work in their chains of behavioral facilities including the Facility;

b. the expenditures for staffing at the behavioral facilities including the Facility;

c. the revenue targets for each behavioral facilities including the Facility;

d. the payor mix, and, census targets for each behavioral facilities including the Facility; [and]

e. patient recruitment programs and discharge practices at each behavioral facilities including the Facility.

Doc. 41 at 10.  The Amended Complaint also alleges that AH System "tightly managed, directed, and supervised" all "cash management functions, revenues and expenditure decisions" at the Facility.  *Id.*  Plaintiffs allege that AH System "exercised complete control and domination over [Anew's] finances and business practices," causing Anew "to operate at a loss" and for its "liabilities to exceed its assets during the years of 2020 and 2021[.]"  *Id.* at 17; *Dean Operations, Inc.*, 896 P.2d at 1017  (satisfying the "grossly inadequate capital"; "pays the salaries or expenses or losses of"; and does "not act independently in the interest of the subsidiary but take[s] direction from the parent corporation" factors).

Plaintiffs' additional pleadings about defendants' shared sole member, management control, and disparate funds sufficiently allege a theory that AH System is the alter ego of Anew.  Plaintiffs' alter ego theory thus survives defendants' Motion to Dismiss.  Last, the court turns to plaintiffs' last claim.

### 3.   Pain and Suffering and Punitive Damages (Count III)

Decedent's Estate asserts damages for decedent's pain and suffering, including punitive damages.  Doc. 41 at 18–22.  The court first addresses pain and suffering, then punitive damages.

In Kansas, plaintiffs "must present evidence of conscious pain and suffering in order to recover damages on a survival claim."  *St. Clair v. Denny*, 781 P.2d 1043, 1049 (Kan. 1989).  "Plaintiffs must therefore show that decedent was conscious at some time after the impact."

*Cochrane v. Schneider Nat. Carriers, Inc.*, 968 F. Supp. 613, 617 (D. Kan. 1997) (applying Kansas law); *see also Nichols v. Marshall*, 486 F.2d 791, 793 (10th Cir. 1973) (applying Kansas law and asking whether plaintiff was conscious post-impact before awarding punitive damages).

Here, the pleadings sufficiently allege a basis to recover pain and suffering damages.  The Amended Complaint asserts that decedent, while in defendants' care, "was harmed and suffered non-economic damages, including pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life."  Doc. 41 at 15.  Plaintiffs also allege that decedent "suffered from an avoidable fall and hip fracture" at the Facility and died three days later.  *Id.* at 1.  Such pleadings, accepted as true, contain sufficient factual content to state a plausible claim for relief because decedent could've been conscious when he fell and "at some time after the impact."  *Cochran*, 968 F. Supp. at 617; *see Mozier v. Parsons*, 852 F. Supp. 925 (D. Kan. 1994) (denying summary judgment against punitive claim because decedent could've experienced pain and suffering before drowning in a pool unless she was unconscious when she entered the pool); *Garay v. Missouri Pacific R. Co.*, 38 F. Supp. 2d 892, 901 (D. Kan. 1999) (denying summary judgment against punitive claim because decedent inhaled foreign material and "experienced some degree of conscious pain and suffering" after a vehicle accident but "before he died").

Next, plaintiffs assert that decedent's Estate is entitled to recover punitive damages from defendants.  To recover punitive damages, a plaintiff must prove "by clear and convincing evidence . . . that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice."  Kan. Stat. Ann. § 60-3701.  Wanton conduct requires "a two-pronged showing:  (1) that the act was 'performed with a realization of the imminence of danger'; and (2) that the act was performed with 'a reckless disregard [of] or complete indifference to the probable consequences of the act.'"  *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237,

1244 (10th Cir. 2009) (applying Kansas law and quoting *Reeves v. Carlson*, 969 P.2d 252, 256 (Kan. 1998)).

The Amended Complaint alleges defendants "were malicious, wanton, grossly negligent and reckless, and performed in reckless disregard of [decedent's] welfare and safety[.]"  Doc. 41 at 21.  Plaintiffs allege that decedent suffered an avoidable fall because defendants "knew that their conscious disregard to provide adequate staff; properly capitalize Facility, train, and/or supervise their . . . employees during 2020 and 2021 created a high degree of probability of injury to residents," including decedent.  *Id.*  Plaintiffs further allege that "defendants showed a complete indifference to, or conscious disregard, for the safety of others" when they failed to properly staff, fund, and train employees.  *Id.*

These pleadings adequately allege that defendants acted wantonly—that is, that defendants realized "the imminence of danger" in the form of harm to residents, yet understaffed and underfunded the Facility, recklessly disregarding or acting with "complete indifference to the probable consequences of its conduct."  *Wagner*, 586 F.3d at 1245 (citation and internal quotation marks omitted).  The Estate's request to recover punitive damages survives the Motion to Dismiss.

### D.   Motion to Dismiss Conclusion

The court denies defendants' Motion to Dismiss (Doc. 10) because plaintiffs plead facts which sufficiently allege a plausible claim for wrongful death, an alter ego claim, and a request to recover damages based on pain and suffering, and for punitive damages.[2]

---

[2]   Plaintiffs' Response to defendants' Motion to Dismiss (Doc. 51) asserts that plaintiffs' "alter ego allegations against Assurance Health System, LLC Establish Personal Jurisdiction."  Doc. 62 at 5–8.  Defendants correctly reply that their Motion to Dismiss doesn't challenge personal jurisdiction.  Doc. 68 at 4.  The court thus ignores the personal jurisdiction argument in plaintiffs' Response.  Doc. 62 at 5–8.

IV.      **Conclusion**

This Order decides three pending issues:  defendants' Motion for Summary Judgment (Doc. 38); defendants' Objections and Motion to Review Magistrate Judge's Order (Doc. 43); and defendants' Motion to Dismiss (Doc. 51).  As already explained, the court dismisses defendants' Motion for Summary Judgment without prejudice because the Amended Complaint moots the motion.  The court's review of Magistrate Judge Mitchell's Order granting plaintiffs' Motion to Amend concludes that it wasn't clearly erroneous or contrary to law.  The court thus declines to overrule Judge Mitchell's Order.  Finally, the court denies defendants' Motion to Dismiss because the alleged facts in the Amended Complaint plausibly allege a wrongful death claim, an alter ego theory, and a request for pain and suffering and punitive damages.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Objections and Motion to Review Magistrate Judge's Order (Doc. 43) is denied.

**IT IS FURTHER ORDERED THAT** defendants' Motion for Summary Judgment (Doc. 38) is dismissed without prejudice.

**IT IS FURTHER ORDERED THAT** defendants' Motion to Dismiss (Doc. 51) is denied.

**IT IS SO ORDERED.**

**Dated this 5th day of March, 2024, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**