IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CATHY AIKEN; ROB AIKEN; and RUTH MACOUBRIE as the surviving children of decedent, HAROLD THOMAS AIKEN; and CATHY AIKEN as administrator of the estate of HAROLD THOMAS AIKEN,<br><br>Plaintiffs,<br><br>v.<br><br>ASSURANCE HEALTH SYSTEM LLC and ANEW HEALTH, LLC,<br><br>Defendants. | Case No. 22-2385-DDC-ADM |

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiffs Cathy Aiken, Rob Aiken, and Ruth Macoubrie's Application for Approval of Wrongful Death Settlement (Doc. 134). As the Kansas Wrongful Death Act requires, the court conducted a settlement hearing on June 24, 2025. Plaintiffs appeared in person and by their attorney, Ryan Fowler. Defendants, Assurance Health System, LLC and Anew Health, LLC, appeared by their attorneys, Charles Miller and John Smith. This Order approves the settlement agreement reached by the parties. It does so after evaluating the attorneys' fees and apportionment of the funds, below.

I.  **Findings of Fact**

The court, after reviewing the parties' submissions and hearing the testimony presented at the hearing, finds as follows:

1. Harold Thomas Aiken ("decedent"), died on June 30, 2021. Neither the decedent's parents nor a spouse survived him.

2. Plaintiffs Cathy Aiken, Rob Aiken, and Ruth Macoubrie brought this action as the surviving children of decedent, in their individual capacities.[1]

3. Decedent was a resident at Anew Health, LLC. Plaintiffs allege that he sustained injuries at Anew Health because defendants acted negligently, causing or contributing to decedent's untimely death.

4. Plaintiffs retained Steele Law Firm, LLC as their counsel and representatives to prosecute this case. Counsel investigated both the law and facts pertinent to this case. He then advised plaintiffs that they should settle their case against defendants for a confidential amount.

5. Defendants deny liability. And they deny that they caused or contributed to decedent's injuries and death. But they negotiated a settlement with plaintiffs, who are entitled to sue under Kan. Stat. Ann. § 60-1902.

6. The parties negotiated a settlement that—if approved—would provide defendants with a full and complete release from liability. Also, it would settle all claims against defendants for decedent Harold Aiken's injuries and death under the terms of the Release and Settlement Agreement. (Ex. 1).[2]

---

[1]   Cathy Aiken also brought this action in her capacity as administrator of decedent's estate.

[2]   Exhibit 1 was introduced at the start of the June 24, 2025 hearing and subsequently withdrawn at the end of the hearing consistent with the confidential nature of the settlement.

7. The parties bargained for a confidential settlement.[3] The only persons entitled to settlement proceeds under Kan. Stat. Ann. § 60-1902 are: Cathy Aiken (Daughter); Rob Aiken (Son); James Aiken (Son);[4] and Ruth Macoubrie (Daughter), as the four surviving children and only heirs of decedent.

8. Their agreement provided that Steele Law Firm would receive a percentage of the gross amount recovered and reimbursement of its out-of-pocket expenses.

9. The settlement agreement also provided that the remaining funds—after reducing the amount designated to cover attorneys' fees and medical liens—would disperse equally among decedent's four surviving heirs.

10. At the June 24, 2025, settlement approval hearing, Cathy Aiken testified on behalf of the four surviving heirs. She asked the court to approve plaintiffs' attorneys' fees and

---

[3] The court intentionally has omitted references to the settlement amounts in this Order because the parties' settlement agreement includes a confidentiality clause. During the June 24, 2025, hearing, the court heard the parties' arguments for maintaining the confidentiality of the settlement figures. It finds that the interest in preserving the actual amount of the confidential settlement negotiations outweighs the public interest in accessing the settlement amounts. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (explaining that while the public has a "general right to inspect and copy public records and documents," the right "is not absolute").

Specifically, counsel for plaintiffs explained that the confidentiality provision was material to his clients' decision to settle this contested case. And nullifying the provision would subvert the parties' agreement. Courts long have recognized a public interest supporting private efforts to resolve litigation. What's more, in the Kansas Wrongful Death Act the Kansas Legislature recognized a public policy interest in court approval of specified aspects of lawsuits brought under the Act. As the Order discusses, the Kansas Wrongful Death Act requires court approval of how a settlement apportions the settlement proceeds among decedent's heirs. *See* Kan. Stat. Ann. § 60-1905. But the Act doesn't require court approval of the settlement amount itself. *Cf. Adams v. Via Christi Reg'l Med. Ctr.*, 19 P.3d 132, 137–39 (Kan. 2001) (explaining Kan. Stat. Ann. § 60-1903's requirement for a court or jury "to award fair and just damages" is "associated with trials and verdicts" but not settlements). Given the Legislature's expression of the extent of the public interest, the court concludes that the public's interest in the actual amount of the parties' agreement does not outweigh the parties' interest in resolving disputed litigation on a confidential basis.

[4] James Aiken is a surviving heir of decedent but, unlike the other three surviving heirs, is not a party to the suit.

apportion the remaining settlement proceeds equally among her, Rob Aiken, James Aiken, and Ruth Macoubrie.

11. Cathy Aiken also testified—on behalf of the four surviving heirs—that the attorneys' fees and apportionment, as outlined in the Settlement Statements, are consistent with what the heirs had agreed to, both in their contract with counsel and in the Settlement Agreement with defendants.

12. Cathy Aiken also testified—again on behalf of the four surviving heirs—that the equal apportionment of the remaining funds will serve the heirs' best interests given they all experienced the loss equally.

After considering the parties' submissions, the testimony given at the settlement hearing, and counsel's comments, the court decides the attorneys' fees are reasonable and the apportionment of the wrongful death settlement is proper. The court explains its conclusions, below.

## II.     Legal Standard

As a federal court sitting in diversity, the court "appl[ies] the substantive law of the forum state, Kansas." *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1302 (10th Cir. 2011). As already discussed, plaintiffs bring this action under the Kansas Wrongful Death Act. The Act identifies the court's role in a Kansas wrongful death settlement under Kan. Stat. Ann. § 60-1905. The full text of § 60-1905 provides:

> The net amount recovered in any such action, after the allowance by the judge of costs and reasonable attorneys fees to the attorneys for the plaintiffs, in accordance with the services performed by each if there be more than one, shall be apportioned by the judge upon a hearing, with reasonable notice to all of the known heirs having an interest therein, such notice to be given in such manner as the judge shall direct. The apportionment shall be in proportion to the loss sustained by each of the heirs, and all heirs known to have sustained a loss shall share in such apportionment regardless of whether they joined or intervened in the action; but in the absence of fraud, no person who failed to join or intervene in the action may claim any error

in such apportionment after the order shall have been entered and the funds distributed pursuant thereto.

The Kansas Wrongful Death Act thus requires the court to apportion the recovery after conducting a hearing. *Id.* It provides that the court, first, should allow costs and reasonable attorneys' fees for plaintiffs' counsel. *Id.* The Act then directs the court to apportion the recovery among the heirs in proportion to the loss sustained by each one. *Id.*; *see also Flowers v. Marshall*, 494 P.2d 1184, 1187 (Kan. 1972) (explaining that the statute "provides for an apportionment among the heirs of any amount recovered to be made by the trial court according to the loss sustained by each").

The Kansas Wrongful Death Act allows recovery of damages for the following kinds of loss: "(1) mental anguish, suffering, or bereavement; (2) loss of society, companionship, comfort, or protection; (3) loss of marital care, attention, advice, or counsel; (4) loss of filial care or attention; (5) loss of parental care, training, guidance, or education; and (6) reasonable funeral expenses for the deceased." Kan. Stat. Ann. § 60-1904 (quotation cleaned up). This statute thus allows the court to apportion both pecuniary and non-pecuniary losses. *Turman v. Ameritruck Refrigerated Transp., Inc.*, 125 F. Supp. 2d 444, 450–55 (D. Kan. 2000); *see also* Kan. Stat. Ann. § 60-1903 (describing damages the court or jury may award in a wrongful death action).

Pecuniary damages in a wrongful death action are those that "'can be estimated in and compensated by money.'" *Turman*, 125 F. Supp. 2d at 453 (quoting *McCart v. Muir*, 641 P.2d 384, 391 (Kan. 1982)). Pecuniary damages "'should be equivalent to those pecuniary benefits or compensation that reasonably could have resulted from the continued life of the deceased.'" *Id.* (quoting *McCart*, 641 P.2d at 391). In Kansas, pecuniary damages "include losses of such things as marital or parental care, services, training, advice, and financial support." *Id.*

Non-pecuniary damages, on the other hand, are generally intangible and may include compensation for "'mental anguish, bereavement, loss of society, and loss of companionship.'" *Id.* at 451 (quoting *McCart*, 641 P.2d at 391). "The Kansas Supreme Court has recognized that 'while these [intangible damages] are nebulous and impossible to equate satisfactorily with money, they nonetheless are very real and onerous to a bereaved [family member], often far outweighing in severity and permanent effect the pecuniary loss involved.'" *Id.* (brackets in original) (quoting *Corman v. WEG Dial Tel., Inc.*, 402 P.2d 112, 115 (Kan. 1965)).

**III.     Analysis**

The court addresses the settlement approval issues in the order that Kan. Stat. Ann. § 60-1905 presents them, starting with attorneys' fees and then moving to the apportionment of the remaining funds.

**A.     Attorneys' Fees**

Kan. Stat. Ann. § 60-1905 "requires the district court to determine a reasonable fee for the plaintiffs' attorneys in a wrongful death case." *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 207 (Kan. Ct. App. 1999). "The general rule is that an attorney is entitled to the reasonable value of services performed for the client." *Id.* When deciding whether a requested fee is reasonable, the court addresses the factors set forth in Kansas Rule of Professional Conduct 1.5(a). *Id.* Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

KRPC 1.5(a).

Plaintiffs' counsel here seeks an award of attorneys' fees representing 40% of the gross recovery. This is the percentage specified in the contingency fee agreement counsel reached with plaintiffs. In plaintiffs' motion, plaintiffs' counsel described the work conducted to reach the settlement and provided support for each of the relevant factors.

The court addresses the specified factors, below. *First*, it describes any factors that disfavor a finding of reasonableness, *then*, it discusses those factors that are neutral, and, *finally*, those factors that favor a finding of reasonable attorneys' fees. For clarity's sake, the court notes, at the outset, that multiple prongs comprise the first factor. So, the court addresses that first multi-pronged factor under both the disfavored and favored analyses.

The first factor specified in KRPC 1.5(a) includes "the time and labor required." *Id.* Plaintiffs' counsel advised that he couldn't produce any billing records. He explained that his firm does contingent fee work and so, the attorneys there do not keep time records. The court is mindful that a segment of the practicing trial bar accepts representations on a contingent fee basis. There is nothing nefarious about this business model or those who choose to organize their attorney/client relationship under it. But the Kansas Supreme Court has decided that the "time and labor required" for the job affects the reasonableness of an attorneys' fee, *Baugh*, 973 P.2d at 207 (adopting KRPC 1.5(a)'s standards in context of Kan. Stat. Ann. § 60-1905). So, the absence of any timekeeping records hinders the court's ability to apply this factor to this case. Plaintiffs' counsel is the market participant who elected not to keep time records. The court thus assigns responsibility for that decision to counsel, not plaintiffs themselves. This factor—at least partially—disfavors counsel's request to approve his fee application.

Other factors adopted in KRPC 1.5(a) are neutral. Plaintiffs' counsel informed the court that his acceptance of this case did not preclude him from accepting other matters (second

7

factor). Relatedly, nothing suggests that his clients imposed on him any extraordinary time limitations (fifth factor). On the "nature and length of the professional relationship with the client"—KRPC 1.5(a)'s sixth factor—counsel put forth nothing indicating a prior relationship with plaintiffs. So, nothing suggests that counsel should receive a premium fee or absorb a discounted one because of a long-standing relationship with the clients. These three factors are neutral here.

Finally, several factors specified in KRPC 1.5(a) favor a finding that counsel's fee request is a reasonable one. Counsel summarized—in detail—his efforts to ensure plaintiffs' claims reached a determination on the merits. This work included reviewing medical records; coordinating the opening of a probate estate; filing various motions and responses to defense counsel's motions; engaging in discovery; hiring and vetting expert witnesses; engaging in mediation; and, ultimately, dedicating two-and-a-half years to litigating this case. Counsel provided this summary as evidence of the time and labor required in lieu of billing records (a part of the first factor). Thus, while the absence of billing records disfavors plaintiffs' fee request, this collection of factors favors it. Other factors favor a finding of reasonableness as well.

Counsel explained that he devotes his practice to wrongful death and personal injury matters. This practice focus suggests that counsel has developed the "skill requisite to perform the legal service [involved in the representation] properly" (another part of the first factor). KRPC 1.5(a). The "amount involved and the results" achieved (fourth factor) also favor the requested fee award. *Id.* Plaintiffs' counsel cogently explained the difficulty of this case—counsel nonetheless secured a consequential settlement which he contends is a result of his reputation in the community (seventh factor).

Last, the court finds that "the fee customarily charged in this locality for similar services" (fourth factor) and "whether the fee is fixed or contingent" (eighth factor) favor counsel's fee request. *Id.* Plaintiffs' counsel accepted this engagement with the risks inherent in a contingent fee arrangement. It was possible that counsel would invest time and capital into the case and receive nothing. He put his own skin in the game. The court's experience with similar cases reveals that a 40% fee arrangement, though on the high end of fees for settling cases, is a fee sometimes charged in this locality. Indeed, our court has approved a 40% fee arrangement in other cases apportioning wrongful death proceeds under Kan. Stat. Ann. § 60-1905. *See, e.g.*, *Sedlock v. Overland Park Med. Invs., LLC*, No. 19-2614-DDC, 2021 WL 1056516 at *4–5 (D. Kan. Mar. 19, 2021) (finding that a 40% contingency fee award was reasonable given the circumstances). Moreover, granting this request "honors an agreement bargained for by competent adults." *Roth v. Builder's Stone & Masonry, Inc.*, No. 19-2747-DDC-GEB, 2020 WL 7633973, at *3 (D. Kan. Dec. 22, 2020) (approving fee request under Kan. Stat. Ann. § 60-1905). The court thus concludes the 40% attorneys' fee award contemplated by plaintiffs' contingent fee agreement is reasonable in this case.

In sum, while one KRPC 1.5(a) factor—at least partially—disfavors the fee request and several others are neutral, most of the factors favor approval. The court thus finds that counsel's fee request here is a reasonable one and approves it.

### B. Apportionment of Settlement

Finally, the court considers how to apportion the remaining wrongful death settlement proceeds—after deducting attorneys' fees and the portions of the settlement allocated to reimbursing Medicare. The plaintiffs all confirmed they have reviewed the settlement

documents and are satisfied with the work their attorneys performed. The heirs[5] ask the court to split the remaining settlement proceeds equally between them (25% each). The heirs testified, through Cathy Aiken's representation, that they are decedent Harold Aiken's surviving children, and his only heirs at law. The heirs also testified, again through Cathy Aiken's representation, that they have sustained an equally tragic loss and agreed to an equal allocation. After considering the evidence at the hearing, the court concludes the proposed equal apportionment between Cathy Aiken, Rob Aiken, James Aiken, and Ruth Macoubrie is appropriate.

## IV.     Conclusion

As explained in this Memorandum and Order, the court grants plaintiffs' Application for Approval of Wrongful Death Settlement (Doc. 134). The court approves the 40% agreed upon contingency fee arrangement for attorneys' fees. And the court apportions the remaining settlement proceeds, after reducing the amount designated for medical liens, equally between heirs Cathy Aiken, Rob Aiken, James Aiken, and Ruth Macoubrie.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs Cathy Aiken, Ruth Macoubrie, and Rob Aiken's Application for Approval of Wrongful Death Settlement (Doc. 134) is granted. The court approves counsel's fee request and apportions the wrongful death settlement proceeds in the fashion described by this Memorandum and Order.

**IT IS SO ORDERED.**

**Dated this 1st day of July, 2025, at Kansas City, Kansas.**

> s/ Daniel D. Crabtree
> **Daniel D. Crabtree**
> **United States District Judge**

---

[5] Since James Aiken isn't a plaintiff, the court refers to the heirs here.